CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

6/1/2023

LAURA A. AUSTIN, CLERK
BY:   s/ CARMEN AMOS
    DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

|  |  |
|---|---|
| AMBER BROOKS, *et al.*, | |
| *Plaintiffs*, | Case No. 6:22-cv-00033 |
| v. | <u>MEMORANDUM OPINION</u> |
| KENNETH BRANHAM, *et al*., | |
| *Defendants*. | Judge Norman K. Moon |

Plaintiffs in this case are members of the Monacan Indian Tribe. They are suing for federal funds to which they claim they are entitled as members of the Tribe. Plaintiffs contend that Defendants are unlawfully preventing delivery of those federal funds from tribal coffers to them. Plaintiffs' complaint and claim, as pleaded, depend upon their view that Defendants are unlawfully preventing the funds' delivery because Defendants are not the lawfully elected Chief and leaders of the Monacan Tribe under tribal bylaws—an internal tribal dispute the resolution of which lies squarely beyond the federal court's competence—and thus, the Court concludes that it lacks jurisdiction over the case and must dismiss.

<u>Background</u>

1. *The Parties*

Congress recognized the Monacan Indian Tribe in the Thomasina E. Jordan Indian Tribes of Virginia Federal Recognition Act of 2017. Pub. L. 115-121, 132 Stat. 40 (Jan. 29, 2018) ("Recognition Act"), § 503.[1]

---

[1] Virginia recognized the Monacan Tribe in 1989. *Id.* § 502.

Plaintiffs are nine members of the Monacan Indian Tribe. *See* Dkt. 19 (Am. Compl.) ¶¶ 1–10. Defendants are Kenneth Branham, Adrian Compton, and Andrew Fink. *Id.* at p. 2. This case largely centers on whether Defendants are Monacan Tribal officials.

According to Plaintiffs, "[t]he Defendants are merely tribal members and not tribal officials." *Id.* at p. 6. Thus, while Defendant Branham "claims to hold the position of Chief" of the Monacan Tribe, Plaintiffs contend that he "is not eligible to hold the post of [C]hief" under Monacan bylaws. *Id.* ¶¶ 32, 39. Rather, Plaintiffs assert that Preston Griffith (who is not a party), is the new Chief. *Id.* ¶ 29. According to Plaintiffs, Defendant Branham "was removed from his claimed position as Chief" by a tribal council resolution. *Id.* ¶¶ 41–42. Plaintiffs also allege that the Monacan tribal council voted to remove Defendant Adrian Compton as tribal administrator. *Id.* ¶ 46. And, Plaintiffs allege that Defendant Amber Fink "was improperly appointed Secretary and Treasurer in December 2021, by a group who was not Tribal council but who claimed to be tribal council through their composition." *Id.* ¶ 51.

2. *Sources of Federal Funds at Issue*

Plaintiffs allege that they each have been "wrongfully denied" payments of between $1,000 and $42,000, from several sources of federal funds to the Tribe. *Id.* ¶¶ 18–27.

In the Amended Complaint (the "complaint"), Plaintiffs cite several "sources of funding for tribal members." *Id.* at p. 3. These include (1) the "Native American Housing and Assistance Act of 1996," which Plaintiffs state "grant[s] housing and related development funds to a Federally recognized tribe," *id.* ¶ 11; (2) the "Snyder Act of 1921," and "subsequent legislation," which "delivers health services to a federally recognized tribe," *id.* ¶ 12; (3) Title V of the CARES Act, which "granted federally recognized tribes funds for unbudgeted expenditures made in response to Covid 19," *id.* ¶ 13; and (4) the American Rescue Plan Act of 2021, by

2

which "funds were granted to the Monacan Indian Nation to strengthen support for vital public services and help retain jobs," *id.* ¶ 13.

Plaintiffs allege that each of these categories of funds "have been received by the tribe and not distributed to the individual members through actions of the Defendants against the will of the Tribal Government." *Id.* ¶¶ 11–13. According to Plaintiffs, "[t]hese funds were used by Defendants for purposes other than their intended purposes through actions of the Defendants, in direct contravention of tribal councils' directives." *Id.* ¶ 14. Tribal revenues were $500,000 in 2018 but increased to $25,000,000 in 2020. *Id.* ¶ 15. Plaintiffs allege that the amount of funds is partly based on the number of tribal members, and because Plaintiffs were listed as members of the tribe, "such funding and benefits were increased by the presence of [Plaintiffs'] names on Tribal documentation." *Id.* ¶ 16. Plaintiffs note that "[t]he timely and certain receipt of federal funds for a particular purpose and intended for tribal members" was addressed in the "Indian Self-Determination and Education Assistance Act," which provided tribes "greater roles in the distribution of federal benefits and services." *Id.* ¶ 17.

Yet Plaintiffs allege that "[t]he Defendants['] actions have prevented the proper distribution of funds against the will of the Tribal Government." *Id.* According to Plaintiffs, "[t]he Defendants took steps to improperly and unlawfully prevent Plaintiffs from receiving Federal funds, which were given in part based on Plaintiffs being members of the Tribe and after their eligibility to receive funds had been established." *Id.* ¶ 36. Plaintiffs further allege that Defendants Branham, Compton and Fink all "improperly exercised control over the said funds," and "prevented their delivery to the Plaintiffs by action and inaction as stated in this Complaint." *Id.* ¶¶ 44, 49, 52. In Plaintiffs' view, Defendants "took actions to single out particular tribal members and declare them to be ineligible for the receipt of tribal funds for reasons which

3

violate federal law." *Id.* ¶ 53. And Plaintiffs assert that Defendants "prepared and disseminated reports declaring that the plaintiffs were not tribal members knowing that these reports would be relied upon to deny plaintiffs the benefits described in this complaint." *Id.* ¶ 55. Plaintiffs however have subsequently clarified that they do not seek recovery of damages from those identified sums, but rather only alleged those amounts to support their claim "that interference had occurred" by Defendants. *See* Dkt. 40 at 25 (Hr'g Tr.).

3. *Plaintiffs' Position on Tribal Officers*

In their complaint, Plaintiffs describe an election held on January 15, 2022, in which they allege that "a new Chief, Preston Griffith and other tribal officers were elected to fill the position vacated by [Defendant] Kenneth Branham, who was ineligible to hold the post and who had been removed two times as chief by tribal council." *Id.* ¶ 32. Plaintiffs further allege that Defendant Branham "claims to hold the position of Chief," but that he was "barred by" the bylaws of the Monacan Tribe which "only allow a person to be chief twice and [Defendant Branham] had already been chief four times." *Id.* ¶ 39. According to Plaintiffs, the Federal Bureau of Indian Affairs ("BIA"), "never received a lawful certification of [Defendant] Branham's purported election as chief in 2019." *Id.* ¶ 40. Further, Plaintiffs allege that Carolyn Rogers was elected Tribal Treasurer on January 15, 2022. *Id.* ¶ 33.[2]

In their complaint, Plaintiffs allege that the results of that described election were transmitted to the BIA, which "has not taken any position regarding this internal matter affecting

---

[2] Plaintiffs also allege that under Monacan Nation bylaws, the Tribal Council "today consists of Preston Griffith, Tribal Chief, Contessa Sancho, Tribal Assistant Chief, Carolyn Rogers, Tribal Treasurer," Tribal Council members Plaintiffs Anita Mayo, Richard Lawhorn, Bobby Thompson, Jr., Susan Peacock, and other Tribal Council members Roxanne Cullen, Jonathan Adcock, Roger Belvin, Peter Johns, Sr., Logan Jackson, and William Redcross, Jr. *Id.* ¶ 29.

the Government of the Monacan Indian Tribe." *Id.* ¶ 34. Plaintiffs attached a letter from the BIA to the Monacan Indian Nation and the Monacan Indian Nation Tribal Council, dated January 25, 2021. Dkt. 19-1 at ECF 24.[3] Therein, the BIA had described its "severely restricted legal authority to intervene" into "an internal tribal government dispute," and stated that the BIA must refrain "from impermissibly infringing upon tribal sovereign rights by interfering in leadership disagreements." Dkt. 19-1 at ECF 25. While the BIA expressed that it may intervene in such a dispute when "there is a separate pending matter implicating the government-to-government relationship necessitating a BIA decision on the tribal dispute," the BIA concluded that it had "not identified a pending matter requiring BIA to take a position in the current leadership dispute." *Id.* The BIA also advised that "if someone suspects any illegal activity" as to "any federal funding," it should be reported to the Department of the Interior's Office of the Inspector General. *Id.*

Plaintiffs attached to their complaint the Monacan Nation bylaws. Dkt. 19-1 at ECF 1–12. They also attached a letter from Plaintiff Bobby Thompson Jr. to the Monacan Indian Nation Tribal Office, dated January 17, 2022. Dkt. 19-1 at ECF 13. The letter purported to inform the Tribal Office of the results of the described election on January 15, 2022: stating that Preston Griffith was Tribal Chief, Contessa Sancho was Tribal Assistant Chief, Kimberly Davis was Tribal Secretary, Carolyn Rogers was Tribal Treasurer, and that Tribal Council included the members alleged in the complaint. *Id.* Plaintiffs also attached to their complaint documents that

---

[3] Plaintiffs allege that "[t]he results of the January 25, 2022 election were transmitted to the Bureau of Indian Affairs who by its stated position … has not taken any position regarding this internal matter affecting the Government of the Monacan Indian Tribe." Am. Compl. ¶ 34. However, since the attached letter from the BIA was dated from the prior year, Dkt. 19-1 at ECF 24, it appears Plaintiffs seek to describe the BIA's position on the leadership disputes in the Monacan Nation *preceding* the January 25, 2022 election.

purported to show vote totals for the candidates in the January 15, 2022 election, vote totals for a

November 20, 2021 tribal meeting, as well as other documents entitled Resolutions of the

Monacan Indian Nation Tribal Council. *Id.* at ECF 14–23.

### 4. *Defendants' Position on Tribal Officers*

For their part, Defendants have asserted in their motion to dismiss that "the Monacan

citizens elected [Defendant] Kenneth Branham as Chief in 2019 for a term set to end in 2023, at

which point another election will be held in accordance with the Nation's laws." Dkt. 26 at 3.

Further, Defendants attested that "Chief Branham's election was—and remains—recognized by

the [BIA], the federal agency charged with maintaining the formal record of federally recognized

tribal governments and their elected officials." *Id.*

Defendants attached a letter from the BIA in support of their Rule 12(b)(1) motion to

dismiss, sent from the BIA to "Chief Branham," which states: "According to our records,

Kenneth Branham was elected Tribal Chief of the Monacan Indian Nation in June 2019, and his

term will end in June 2023." Dkt. 26 at 23. In addition, Defendants wrote that Defendant

Compton was hired to serve as Tribal Administrator on January 27, 2020, and that Defendant

Fink was appointed as Secretary and Treasurer on December 7, 2021. Defendants further

attached a declaration from a Ms. Covington on Monacan Indian Nation letterhead stating that as

of June 9, 2022, Defendant Branham was the Chief of the Monacan Nation, who "is over the

Executive Branch of our government," and that Defendant Compton remained employed as

Tribal Administrator as of that date. *Id.* at 25.

### 5. *Legal Basis for Plaintiffs' Claims for Injunctive Relief*

Plaintiffs cite the Recognition Act as a "legal basis" for Plaintiffs' claims for injunctive

relief, including its statement that the Monacan tribe's "members shall be eligible for all services

6

and benefits provided by the Federal government to federally recognized Indian Tribes." *See* Pub. L. 115-121 ¶ 503(b)(1); *see also* Am. Compl. ¶¶ 62, 63. Plaintiffs further cite the Native American Housing and Assistance Act of 1996, the Snyder Act of 1921, the CARES Act, and the American Rescue Plan Act of 2021, as federal funds referenced by the Recognition Act. *Id.* ¶ 65. Plaintiffs assert that "[t]his matter is properly before the Court as this matter involves the interference by the Defendants … with the delivery of Federal funding and benefits granted to Plaintiff[s] by the [Recognition Act]," which "grants an express and implied right of action for members of the tribe." *Id.* ¶ 70. Thus, Plaintiffs allege, Defendants' actions "are violations of Federal Law." *Id.* Plaintiffs further allege that no adequate remedy at law exists, and that "the statutory provisions stated in this Complaint explicitly confer an entitlement upon the Plaintiffs." *Id.* ¶ 73. And, according to Plaintiffs, Defendants "who were not Tribal Officials and who were acting contrary to Tribal Law, usurped the authority of lawful Tribal Officials and through acts and omissions diverted the funds … as designated for Plaintiffs … to themselves or to other projects without Tribal Council approval in contravention of" the Recognition Act. *Id.* ¶ 76.

Accordingly, Plaintiffs ask the Court (1) "to declare the actions of the Defendants as set forth herein to be unlawful," (2) "to issue an injunction against Defendants to enjoin them from taking any further action or committing any omission which causes Plaintiffs or any similarly situated Tribal member to fail to receive benefits" from the United States," (3) to further enjoin Defendants "from preventing the Plaintiffs from otherwise exercising their rights with respect to their status in this regard as Monacan Tribal members," and (4) to award attorney fees and costs. *Id.* at p. 15.

6. *Defendants' Motion to Dismiss and Hearing*

Defendants filed a motion to dismiss for lack of jurisdiction, and for failure to state a claim. Dkts. 25, 26. Defendants argued that the Court lacked subject matter jurisdiction under Rule 12(b)(1) because of tribal sovereign immunity, because Plaintiffs' complaint raised non-justiciable internal tribal disputes, and because no substantial federal question was presented on the face of the complaint. Dkt. 26 at 3–14. Defendants also contended that Plaintiffs' complaint failed to state a claim to relief under Rule 12(b)(6), and because none of the statutes cited provided a private cause of action. *Id.* at 14–19.

Plaintiffs filed a response in opposition to the motion to dismiss, Dkt. 30, and Defendants filed a reply in support of dismissal. Dkt. 31. The Court then heard oral argument on the motion. Dkt. 40 (transcript). At the hearing, the Court invited supplemental memoranda from the parties addressing the Court's subject matter jurisdiction, including Plaintiffs' standing to bring suit as well as Defendants' positions in the tribe, as would relate to, among other things, their claim of tribal immunity. Dkt. 40 at 36–37, 47 (Hr'g Tr.).

7. *Parties' Supplemental Filings*

Plaintiffs filed a supplemental memorandum and exhibits seeking to provide evidence that (1) Plaintiffs are members of the Monacan Indian Nation; (2) that the Tribal Council manages the business and affairs of the Monacan Indian Nation; (3) that Defendant "Branham was not elected in a certified election, that he was ineligible to be Chief at the time of his improperly certified purported election, and that he was removed as Chief on and before November 2021," and that he "was not elected in the January 2022 election"; (4) that Branham "was not the Tribal Liaison"; and (5) that Defendants Compton and Fink "are not Tribal Officials and in fact hold no proper Tribal Office." Dkt. 44 at 1–2. To argue that Defendant Branham "is

not Chief of the Monacan Indian Nation and is not a Tribal Official," Plaintiffs cited the

Monacan bylaws, and documents purporting to be minutes of Tribal Council meetings, Tribal

Council resolutions and election transmittal documents. *Id.* at 5–6; *see generally* Dkt. 45

(relevant exhibits).

Defendants also filed a supplement regarding subject matter jurisdiction. Dkt. 49. In their

filing, Defendants argued that Plaintiffs had failed to establish that the Court had subject matter

jurisdiction over this action. *Id.* at 1–2. Instead, Defendants asserted that they had established

that (1) the BIA "holds the federal government's authority to confirm the official leaders of

Tribal governments for federal purposes"; (2) the BIA has recognized Defendant Branham "as

the Nation's Tribal Chief since his election in 2019, through the pendency of this lawsuit," and

has thereafter consistently "declined to reverse this status";[4] (3) "dozens of federal agencies …

regularly interact" with Defendant Branham "in his official role" as Chief of the Monacan Tribe;

and (4) that the relief Plaintiffs request can only come from the Monacan Indian Nation and not

from Defendants in their personal capacities. *Id.* at 2.[5]

---

[4] Initially, Defendants filed an August 12, 2022 letter from the BIA to Plaintiff Bobby Thompson, Jr., in which the BIA concluded that it "d[id] not recognize the January 15, 2022, election"—the one in which Plaintiffs contend Preston Griffith was elected Chief—"as a valid Tribal election" under Monacan bylaws. Dkt. 50-8 at 2. However, the BIA itself subsequently asked the Interior Board of Indian Appeals ("IBIA") to vacate that decision on the basis that there was, at that time, "no pending matter necessitating a decision by the BIA regarding the internal tribal leadership dispute." Dkt. 50-10 at 1. In BIA's view, it was its "intent to remain uninvolved in the internal tribal leadership dispute." *Id.* at 1–2. The IBIA accordingly vacated the August 12, 2022 decision and returned jurisdiction to the BIA. Dkt. 51-1 at 2 & n.3. As stated below, the BIA's position was subsequently clarified in its March 29, 2023 letter decision.

[5] Defendants also contend that Plaintiffs have not shown they are entitled to any "benefits" from the asserted Federal programs, or any evidence of tribal mismanagement of such funds. Defendants also contend that the status of Plaintiffs' tribal citizenship is irrelevant in this case to determining the Court's subject matter jurisdiction. *Id.* at 2.

On March 30, 2023, Defendants filed a motion for leave to file a supplemental document concerning the Court's subject matter jurisdiction. Dkt. 77. Defendants sought leave to introduce in the record a March 29, 2023 letter from the BIA sent to "Tribal Chief Branham." Dkt. 77 at 7. Therein, the BIA stated unequivocally: "This letter is to reaffirm the Department of the Interior's (Department) continued recognition of you as the Tribal Chief of the Monacan Indian Nation (Nation)." *Id.* The BIA further determined that "[its] records indicate that you were duly elected to the Tribal Chief position on June 15, 2019, for a four-year term ending in June 2023." *Id.* And, the BIA continued that "[n]either the Department nor the BIA has received any evidence which invalidate the 2019 election results or invalidate your position as the last undisputed elected Tribal Chief of the Nation." *Id.* The BIA further explained that it "respects the [Monacan] Nation's established processes for determining its official Tribal leadership and will continue to administer its statutory responsibilities and to conduct government-to-government relations with you as the valid Tribal representative of the Nation until the conclusion of your term. The BIA Tribal Leaders Directory will reflect this." *Id.* Finally, the BIA's letter explained that it understood that the Monacan Nation would be conducting elections for several Tribal leadership positions, including Tribal Chief, in June 2023, and that the BIA would consider a request to have BIA representatives attend and observe the election. *Id.*

Having considered the BIA's letter-decision, Defendants' motion, Plaintiffs' opposition and Defendants' reply, the Court will grant Defendants' motion for leave to file the letter. *See* Dkts. 77–82. Good cause has been shown that this subsequent determination by BIA bears on the

Court's subject matter jurisdiction and it falls squarely within the Court's direction concerning the scope of supplemental briefing. *See* Dkt. 40 at 47 (Hr'g Tr.).[6]

In addition, Defendants submitted evidence showing that numerous federal government agencies communicate with Defendant Branham as Chief of the Monacan Tribe on official inter-governmental business, including the Department of Homeland Security, the Department of Housing and Urban Development, NASA, the Department of the Interior National Park Service, and FEMA. *See* Dkts. 50-16 (Homeland Security); Dkt. 50-17 (NASA); Dkt. 50-18 (National Park Service); Dkt. 50-19 (FEMA); Dkt. 50-15 (HUD, directory listing Defendant Branham as Chief of the Monacan Indian Nation). In addition, Defendants assert (without contradiction) that the myriad other federal agencies have recognized Defendants as the authorized representatives of the Monacan Indian Nation.[7]

<u>Standard of Review</u>

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure tests a district court's subject matter jurisdiction. The burden of proving subject matter

---

[6] The Court notes that Plaintiffs have responded to BIA's letter of March 29, 2023, arguing that BIA's position therein conflicts with the position previously taken before the IBIA and that it is otherwise unsupported by the tribal bylaws. *See* Dkt. 78-1.

[7] These include the Department of the Army, Treasury Department, U.S. Copyright Office, Department of Commerce, Department of Defense, Department of Energy, Department of State, Department of Transportation, Department of Education, Executive Office of the President, Environmental Protection Agency, Federal Trade Commission, General Services Administration, Department of Health and Human Services, National Archives and Records Administration, Small Business Administration, Department of Agriculture, and the Department of Veterans Affairs. *See* Dkt. 49 at 7.

By contrast, Plaintiffs have neither alleged nor introduced evidence to support that any federal agency recognizes their Tribal Council as the authorized representatives of the Monacan Indian Nation. *See* Dkt. 49 at 7; *see generally* Dkt. 51. Nor have Plaintiffs introduced evidence (or argued) that any of these agencies have not recognized Defendants as the Monacan Indian Nation authorized representatives—rather they have just argued that the authority to become tribal officials must spring from the Monacan bylaws. Dkt. 51 at 1–2, 6–7.

jurisdiction on a Rule 12(b)(1) motion to dismiss is on the plaintiff, as the party asserting the court's jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). When a defendant argues that a claim fails to allege facts upon which subject matter jurisdiction can be based, all the facts alleged in the complaint are assumed to be true and the plaintiff is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. *Id.* However, when a defendant alleges that the jurisdictional allegations in a complaint are not true, a trial court may go beyond the allegations of the complaint and hold an evidentiary hearing to determine if there are facts to support the jurisdictional allegations. *Id.*

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "This pleading standard does not require detailed factual allegations." *ACA Fin. Guar. Corp.*, 917 F.3d at 211 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, "[t]o meet the Rule 8 standard and 'survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *King*, 825 F.3d at 212. However, the Court need not "accept the legal conclusions drawn from the facts," or "accept as true

unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotes omitted).

Subject Matter Jurisdiction

Defendants argue that the Court lacks subject matter jurisdiction over this case. First, they contend that jurisdiction is lacking because the Monacan Indian Nation, as the "true party-in-interest," has sovereign immunity. Dkt. 26 at 1, 4–9. Second, Defendants assert that this case involves nonjusticiable "intra-tribal disputes" that require interpretation of "internal Tribal laws and policy"—a doctrine related to sovereign immunity setting forth a class of matters beyond the jurisdiction of federal courts. *Id.* at 6, 7 n.1, 12–13. Third, Defendants argue that, under the "well-pleaded complaint doctrine," Plaintiffs have failed to state a federal question sufficient for the Court to exercise jurisdiction over any question of federal law. *Id.* at 1, 10–14.

Federal courts are courts of limited subject matter jurisdiction. *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019); *Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999). They only possess power authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A court is to presume, therefore, that a case lies *outside* its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen*, 511 U.S. at 377). Accordingly, the plaintiff bears the burden of establishing subject matter jurisdiction. *Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The Court will first address Defendants' contention that this is a nonjusticiable intra-tribal dispute. Because the Court lacks subject matter jurisdiction on that ground, the Court need not resolve Defendants' assertion of tribal sovereign immunity or other jurisdictional arguments.

<u>This Case Presents Non-Justiciable Intra-Tribal Disputes</u>

Defendants argue that Plaintiffs' claims are based on "intra-tribal disputes," and thus it is "well established that a federal court has no jurisdiction over an intra-tribal controversy." Dkt. 26 at 12. Further, Defendants contend that Plaintiffs' complaint raises "intra-tribal disputes about Tribal laws and policies, rather than on any violations of federal law," and as a result, "federal jurisdiction does not exist." *Id.* Defendants argue that Plaintiffs "improperly invite the Court to interpret the Tribe's internal governing documents to validate Plaintiffs' claim that Defendants are not Tribal officials." Dkt. 31 at 6. But, Defendants assert, federal courts "have consistently found that they do not have jurisdiction to decide such a case" requiring "interpretation of a Tribe's internal laws, policies, and governance procedures." *Id.* And Defendants conclude that this "maximum is particularly enforced where the controversy involves tribal governance and eligibility for membership" in a tribe. *Id.* at 7.

In their briefing, Plaintiffs do not specifically address the "intra-tribal dispute" doctrine. *See generally* Dkt. 30. Nonetheless, Plaintiffs are candid in response: "There is certainly an ongoing inter-tribal government dispute." Dkt. 51 at 11. And they double-down on that dispute—writing that "[they] allege in their complaint that the tribal government supports their claim and that the defendants are not tribal government officials." Dkt. 30 at 2. Elsewhere, they contend that "Defendants in this matter are not the lawful government officials." Dkt. 51 at 1. Their briefs are replete with these arguments. *See, e.g.*, Dkt. 30 at 10 ("These allegations establish that the defendants are not tribal officials."); *id.* at 11 ("The Complaint clearly states that Kenneth Branham is not, and was not, Chief of the Monacan Indian Nation and that its present Chief is Preston Griffith."); *id.* at 14 (stating that "the complaint alleges that [Defendants] were not tribal officials"). As such, Plaintiffs argue, "these individuals acted outside Tribal authority and are

14

merely individuals only capable of asserting their personal defenses to the claims in the Complaint." *Id.* at 11.

In Plaintiffs' view, tribal bylaws support their claim to tribal leadership and otherwise disprove Defendants' claims to positions of tribal authority. They argue "the 2013 [Tribal] bylaws … clearly state that only tribal council can manage the business and affairs of the tribe and additional forms the basis for both removals of Kenneth Branham as chief." Dkt. 30 at 2. Thus, Plaintiffs contend that they bring a "claim for injunctive relief" against those "who are not the legitimate government of the Monacan Indian Nation as established by the 2013 [b]ylaws." *Id.* at 11. And based on "tribal governing documents," Plaintiffs assert that Defendant Branham "could not be elected chief under these documents," and that he "never complied with the bylaws in this regard or put forth a properly constituted council." Dkt. 51 at 11.

"Indian tribes are distinct, independent political communities, retaining their original natural rights in matters of local self-government. Although no longer possessed of the full attributes of sovereignty, they remain a separate people, with the power of regulating their internal and social relations." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55 (1978) (cleaned up). Given tribes' "unique status" under the law, "the federal courts recognize two analytically distinct but related bases that may defeat jurisdiction in cases involving tribes." *Miccosukee Tribe of Indians of Fl. v. Cypress*, 814 F.3d 1202, 1208 (11th Cir. 2015). First, tribes enjoy tribal immunity, *i.e.*, a "common-law immunity from suit traditionally enjoyed by sovereign powers" subject to Congressional control—and thus, "without congressional authorization," tribes are "exempt from suit." *Santa Clara Pueblo*, 436 U.S. at 58; *Cypress*, 814 F.3d at 1208. The second, related doctrine—at issue here—establishes that federal courts lack jurisdiction over "intra-tribal disputes." *See Newtok Village v. Patrick*, 21 F.4th 608, 620 (9th Cir. 2021) ("Intratribal disputes

15

are generally nonjusticiable in federal courts."). That is because "certain issues are, by their very nature, inherently reserved for resolution through purely tribal mechanisms due to the privilege and responsibility of sovereigns to regulate their own, purely internal affairs," and accordingly, federal courts should not be in the business of "dictating answers to such questions." *Cypress*, 814 F.3d at 1208.

The Court lacks jurisdiction over Plaintiffs' claims because they present paradigmatic "intra-tribal disputes." Indeed, it is hard to conceive of more quintessentially internal tribal disputes than those raised by Plaintiffs and integral to their claims. And the Fourth Circuit has been clear—"It is well established that a federal court has no jurisdiction over an intra-tribal controversy." *Crowe v. E. Band of Cherokee Indians, Inc.*, 506 F.2d 1231, 1233 (4th Cir. 1974). Principal among these internal tribal disputes is that Plaintiffs' complaint and claims raise a non-justiciable "internal tribal leadership dispute." *See In re Sac & Fox Tribe of the Mississippi in Iowa / Meskwaki Casino Litig.*, 340 F.3d 749, 763 (8th Cir. 2003). Further still, this is precisely the type of internal tribal dispute that the Fourth Circuit had in mind—an "internal controversy … over tribal government." *Motah v. United States*, 402 F.2d 1, 2 (10th Cir. 1968); *Crowe*, 506 F.2d at 1233 (citing *Motah*).

Plaintiffs' claims depend upon and ask the Court to resolve an internal tribal leadership dispute. In fact, *nearly one-third of Plaintiffs' complaint* is devoted to allegations that: "[t]he Defendants are merely tribal members and not tribal officials." Am. Compl. at 6–12 (emphasis and capitalization omitted). Therein, Plaintiffs allege that "[t]he Defendants are not Tribal officials as they hold no position consistent with tribal government By-laws." *Id.* ¶ 35.

Plaintiffs purport to rely on tribal bylaws and resolutions to support their position that each of the Defendants are imposters and not true tribal officials. As to Defendant Branham,

16

Plaintiffs allege that while he "*claims* to hold the position of Chief," he "is not eligible to hold the post of chief as the By-laws [of the Monacan Indian Nation] only allow a person to be chief twice and Kenneth Branham had already been chief four times." *Id.* ¶ 39 (emphasis added). Thus, Plaintiffs allege, "[h]is purported election in 2019 is thereby barred by the By-laws which are possessed by the BIA and declared by the BIA to be the tribal governing document." *Id.* Plaintiffs allege that Defendant Branham was later "removed from his claimed position as Chief by a tribal council Resolution No. 21-1120-02," because he did not "comply with tribal councils' lawful requests" to develop a budget and account for appropriations. *Id.* ¶ 41. And Plaintiffs allege that he was later "removed for a second time from his claimed position as Chief … by the tribal forum on November 20, 2021" again for refusing to comply with tribal council's demand he develop a budget, among other things. *Id.* ¶ 42. Plaintiffs also attached to their complaint a purported tribal resolution explaining the "detailed reasons" for removing Defendant Branham as Chief. *Id.* ¶ 43. Accordingly, Plaintiffs contend that Defendant Branham has "improperly exercised control over the said [federal] funds" paid "for the benefit of Tribal members" and "prevented their delivery to the Plaintiffs." *Id.* ¶ 44.

Plaintiffs pursue a similar tack against Defendants Compton and Fink. As to Defendant Compton, Plaintiffs allege that "[t]ribal council voted specifically disapproving [his] employment as tribal administrator," and "[t]ribal council later voted again to remove him as tribal administrator." *Id.* ¶ 46. And as to Defendant Fink, Plaintiffs allege that "Amber Fink was improperly appointed Secretary and Treasurer in December 2021, by a group who was not Tribal council but who claimed to be tribal council," and that their "composition did not conform to the lawful tribal requirements regarding the proper number of tribal members." *Id.* ¶ 51. Accordingly, Plaintiffs claim that "Amber Fink has never been elected Secretary or Treasurer in

a lawful general government election." *Id.* Thus, Plaintiffs allege that "Amber Fink improperly exercised control over the said funds" as well. *Id.* ¶ 52. And to cap off Plaintiffs' arguments, Plaintiffs allege that "[t]he Defendants who were not Tribal Officials and who were acting contrary to Tribal Law, usurped the authority of lawful Tribal Officials," and "diverted the funds hereto described," all "without Tribal Council Approval." *Id.* ¶ 76.

For their part, Defendants assert that "the Monacan citizens elected Kenneth Branham as Chief in 2019 for a term set to end in 2023, at which point another election will be held in accordance with the Nation's laws," and that "Chief Branham's election was—and remains— recognized by the United States Department of Interior's Bureau of Indian Affairs (BIA), the federal agency charged with maintaining the formal record of federally recognized tribal governments and their elected officials." Dkt. 26 at 3.

While various BIA letter-decisions before the Court bear on the issue, Defendants' most recent and most definitive BIA letter-decision of March 29, 2023, is most consequential— wherein BIA informed "Tribal Chief Branham" that it "reaffirm[s] the Department of the Interior's continued recognition of you as the Tribal Chief of the Monacan Indian Nation." Dkt. 77 at 7. The BIA further determined that its "records indicate that [Branham] was duly elected to the Tribal Chief position on June 15, 2019, for a four-year term ending in June 2023," and that the BIA had received no "evidence which invalidate[s] the 2019 election results or invalidate[s] [his] position as the last undisputed elected Tribal Chief of the Nation." *Id.*[8]

To be sure, Plaintiffs have responded to the BIA challenging its decision as unsupported by Tribal bylaws and arguing that it is inconsistent with prior BIA policy. *See* Dkt. 78-1. Rather,

---

[8] Defendants also provided a letter on Monacan Indian Nation letterhead stating that Adrian Compton is "Tribal Administrator of the Monacan Indian Nation," and that  Defendant Amber Fink "remains Secretary and Treasurer" of the Monacan Indian Nation. Dkt. 26 at 3.

Plaintiffs have largely relied on the earlier (and now superseded) January 25, 2021 letter, in which the BIA had stated that it found no matters "requiring BIA to take a position in the current leadership dispute" at that time. Dkt. 30 at ECF 40.

Regardless, notwithstanding BIA's determination that for purposes of federal government relations with the Monacan Nation, Defendant Kenneth Branham is Chief at least until the next election in June 2023, BIA's decision is not before this Court for review. The record discloses no appeal to the Interior Board of Indian Appeals, and no final agency action subject to legal challenge—certainly not in the underlying complaint.

And this Court is emphatically not the forum to resolve Plaintiffs' intra-tribal leadership dispute. The Court "cannot provide … resolution of the internal tribal leadership dispute." *In re Sac & Fox Tribe*, 340 F.3d at 763. Here Plaintiffs' claim of entitlement to federal funds and request that the Court enjoin Defendants from interfering with the funds' distribution "could only be granted to the extent the court could first resolve the intra-tribal dispute" and determine if Defendants had been rightfully elected Monacan Nation officials, and further, determine the composition of the tribal council under Monacan Nation bylaws. *See id.* at 764. Leadership disputes of this nature are non-justiciable intra-tribal matters. *See id.* ("We have characterized an election dispute concerning competing tribal councils as this type of non-justiciable intra-tribal matter."); *see also Motah*, 402 F.2d at 2 ("an internal controversy … over tribal government" is "a subject not within the jurisdiction of the court as a federal question").

In addition, Plaintiffs' claims are also non-justiciable because they depend upon this Court interpreting and applying Monacan bylaws and laws. This is a core feature of Plaintiffs' claims. For example, Plaintiffs ask this Court to interpret and apply Monacan bylaws and laws to hold that (1) their Tribal Council slate were lawfully elected to positions of tribal authority, Am.

Compl. ¶ 29; (2) that Defendant Branham was "ineligible to hold the post" of Chief, *id.* ¶ 32(2) that Tribal Council, and "not the Chief," are to "manage the business and affairs" of the Monacan Nation, *id.* ¶ 30. However, resolution of "disputes involving questions of interpretation of the tribal constitution and tribal law is not within the jurisdiction of the district court." *Runs After v. United States*, 766 F.2d 347, 352 (8th Cir. 1985); *see also In re Sac & Fox Tribe*, 340 F.3d at 763 (explaining that "[j]urisdiction to … interpret tribal constitutions and laws … lies with Indian tribes and not in the district courts").

Further still, to the extent Plaintiffs' claims raise issues of tribal membership, those too present yet another subject closely reserved to the Tribe and beyond the competence of federal courts. Plaintiffs allege that "Defendants prepared and disseminated reports declaring that the plaintiffs were not tribal members knowing that these reports would be relied upon to deny [P]laintiffs the benefits described in this complaint." Am. Compl. ¶55. However, Plaintiffs assert that they were and are entitled to the federal funds by virtue of "their being members of the Monacan Indian Nation." *Id.* at p. 19. To be sure, Defendants argue that the status of Plaintiffs' tribal membership "is irrelevant to determining subject matter jurisdiction" because they read Plaintiffs' complaint as "not ask[ing] the Court to make any determinations regarding their citizenship." Dkt. 49 at 12. And that may be. But Plaintiffs' tribal membership features in the complaint and appears to underlie their claim as to why they have not received federal funds from the tribe. The Court agrees with Defendants that the Court would lack jurisdiction to rule upon contested issues of tribal citizenship. *See id.* at 12–13. Indeed, "[a] tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community." *Santa Clara Pueblo*, 436 U.S. at 72 n. 32. And given the "vast gulf between tribal traditions" and those more familiar to federal courts, the Supreme Court

20

has urged caution before taking action "that would intrude upon these delicate matters." *Id.*

Accordingly, even a strong claim to tribal membership would falter upon the "lack of federal

court jurisdiction to intervene in tribal membership disputes," *Lewis v. Norton*, 424 F.3d 959,

960 (9th Cir. 2005), because the "[j]urisdiction to … issue tribal membership determinations lies

with Indian tribes and not in the district courts," *In re Sac & Fox Tribe*, 340 F.3d at 763. Thus,

because the issue of Plaintiffs' tribal membership lies close to the merits of Plaintiffs' allegations

and claims to entitlement to relief, that provides yet another issue that squarely lies beyond the

Court's jurisdiction. *See Smith v. Babbitt*, 100 F.3d 556, 599 (8th Cir. 1996) (holding that "this

case is most properly left to tribal authorities, in whom the discretion over tribal membership

determinations is vested").

     For these reasons, because Plaintiffs' complaint and claim to relief, as pleaded,

necessarily rest upon numerous, intertwined nonjusticiable issues all beyond the Court's subject

matter jurisdiction and inherently reserved for resolution by the Monacan Nation, the Court will

grant Defendants' motion to dismiss under Rule 12(b)(1) and dismiss Plaintiffs' complaint for

want of subject matter jurisdiction.[9]

     An appropriate order will issue dismissing this action from the Court's active docket.[10]

---

[9] Because the Court has concluded that this Court lacks subject matter jurisdiction over
the internal tribal disputes underlying this suit, the Court need not resolve Defendants' separate
assertion of tribal sovereign immunity. *See Miccosukee Tribe of Indians of Fl.*, 814 F.3d at 1208
(describing these as "two analytically distinct but related bases that may defeat jurisdiction in
cases involving tribes"). Nor does the Court need to address Defendants' grounds for dismissal
for failure to state a claim pursuant to Rule 12(b)(6).

[10] The Court will deny Defendants' motion to strike numerous filings by Plaintiffs,
including on the basis that they were "fraudulent documents created by Plaintiffs to appear to be
authentic internal documents" of the Monacan Nation. Dkt. 61 at 2. The Court is mindful of
Defendants' position that the "presence of such material on this Court's docket" is itself harmful
to the Monacan Nation. *Id.* at 4. But as Defendants rightly argue, Plaintiffs' filings and briefs
"invit[ed] and request[ed] the Court to make such a determination" of "who is the Chief," and
also sought to have the Court review and apply the tribal bylaws, which are issues beyond the

The Clerk of Court is directed to send this Memorandum Opinion to the parties.

Entered this  1st  day of June, 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

jurisdiction of this Court to resolve. *Id.* at 6. Lest the Court not fall afoul of that rule at behest of the Defense, the Court need not decide to strike those filings because, even considering them, they are immaterial to this Court's determination that Defendants' motion to dismiss should be granted for lack of subject matter jurisdiction.